Filed 12/4/23  P. v. Penaloza CA2/4

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ERIBERTO GUEBARA PENALOZA,<br><br>    Defendant and Appellant. | B324354<br><br>Los Angeles County<br>Super. Ct. No. PA003748 |

APPEAL from an order of the Superior Court of Los Angeles County, David Walgren, Judge. Affirmed.

Joshua L. Siegel, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Idan Ivri and Gabriel Bradley, Deputy Attorneys General, for Plaintiff and Respondent.

## INTRODUCTION AND PROCEDURAL BACKGROUND

In 1997, a jury convicted defendant and appellant Eriberto Guebara Penaloza of two counts of first degree murder (Pen. Code,[1] § 187, subd. (a)) and two counts of robbery (§ 211). The trial court sentenced him to consecutive terms of 25 years to life on each murder count, plus a 1-year firearm enhancement. The court stayed sentencing on the robbery counts under section 654. On direct appeal, a different panel of this court affirmed the judgment, in case number B116017 (*Penaloza I*).[2]

In 2019, Penaloza filed a petition for recall of and resentencing on his murder convictions under former section 1170.95.[3] After holding an evidentiary hearing under former section 1170.95, subdivision (d), the trial court denied the petition, concluding the evidence showed Penaloza had been a major participant in the robberies underlying his murder convictions who acted with reckless indifference to human life. We affirmed the trial court's order denying relief. (*People v. Penaloza* (May 3, 2021, B304714 [nonpub. opn.] (*Penaloza II*).)[4]

---

1    All undesignated statutory references are to the Penal Code.

2    We take judicial notice of our opinion in that case. (See Evid. Code, § 452, subd. (a).)

3    Effective June 30, 2022, the Legislature renumbered section 1170.95 to section 1172.6. (Stats. 2022, ch. 58, § 10.) There were no substantive changes to the statute.

4    We granted Penaloza's request for judicial notice of the appellate record in *Penaloza II*.

In September 2022, Penaloza filed another petition for resentencing and requested appointment of counsel.[5] Without appointing counsel, the trial court summarily denied the petition on res judicata grounds. In making its ruling, the court noted Penaloza had previously filed a section 1170.95 petition, the trial court denied that petition, and this court affirmed the trial court's order denying the petition. Penaloza timely appealed.

## DISCUSSION

### A. The trial court's res judicata ruling was error

On appeal, Penaloza argues the trial court prejudicially erred, and violated his federal due process rights, by summarily denying his petition on res judicata grounds. In support of this contention, Penaloza correctly notes that when the trial court denied his original section 1170.95 petition, it relied in part on the statement of facts in our opinion in *Penaloza I*.[6] Penaloza also correctly notes the Legislature has since amended the statute to prohibit such use of facts contained in prior appellate opinions (see § 1172.6, subd. (d)(3); *People v. Flores* (2022) 76 Cal.App.5th 974, 988), and argues, because of this material change in the statute, the trial court's reliance on res judicata in denying relief was error. The Attorney General agrees the trial court erred by relying on res judicata to deny relief.

We agree with the parties. At Penaloza's evidentiary hearing under former section 1170.95, the prosecution stated it

---

5   Penaloza's new petition referenced section 1170.95 although he filed it after the statute was renumbered to section 1172.6.

6   The opinion in *Penaloza I* is contained in the appellate record of *Penaloza II*.

3

was relying on the facts stated in this court's opinion in *Penaloza I*. Because the record clearly demonstrates the prosecution relied on facts contained in our opinion in *Penaloza I* at the evidentiary hearing, we conclude the issue litigated in Penaloza's former section 1170.95 proceeding was different from the issue presented when he filed his second resentencing petition. For this reason, we agree with the parties that the trial court's denial of relief on res judicata grounds was erroneous. (See *People v. Barragan* (2004) 32 Cal.4th 236, 253 [res judicata applies only if the "issue raised in the present action is identical to a claim or issue litigated in a prior proceeding"].)

## B. Remand is unwarranted because any error by the trial court was harmless

Although the parties agree that the trial court erred, they disagree over whether the error was harmless. They also disagree over which harmless error standard should apply. Whereas the Attorney General argues the applicable standard is that articulated in *People v. Watson* (1956) 46 Cal.2d 818, 836 (*Watson*) (i.e., whether Penaloza can show it is reasonably probable he would have received a more favorable outcome), Penaloza argues the error should be deemed structural, or alternatively, should be reviewed under the standard in *Chapman v. California* (1967) 386 U.S. 18, 24 [87 S.Ct. 824, 17 L.Ed.2d 705] (*Chapman*) (placing the burden on the prosecution to show the error was harmless beyond a reasonable doubt). Before analyzing whether the trial court's error was harmless, we will first address which harmless error standard applies.

We conclude the Attorney General is correct that *Watson* applies. We reject Penaloza's assertion that the denial of his petition under res judicata principles should be reversible per se.

4

Implementing that standard would, among other things, be a waste of judicial resources in cases where the record demonstrates remand would be futile regardless of the error. We likewise reject Penaloza's argument that *Chapman* should apply. That standard applies when a defendant's federal constitutional rights have been violated. (*Chapman, supra*, 386 U.S. at p. 24.) Because section 1172.6 is a state ameliorative statute, the trial court's erroneous application of the statute's requirements amounted merely to an error of state law, rendering *Chapman* inapplicable. Because the trial court's error was one of state statutory law, the Attorney General is correct that *Watson* is the applicable prejudice standard. (Cf. *People v. Lewis* (2021) 11 Cal.5th 952, 957-958, 973 (*Lewis*) [erroneous denial of section 1172.6 petition at prima facie stage without appointing counsel is a purely state law issue reviewed for prejudice under *Watson*].)

We now turn to whether the error here was harmless under *Watson*. More specifically, the question is whether it is reasonably probable Penaloza would have obtained a more favorable outcome at a second evidentiary hearing at which the facts from this court's opinion in *Penaloza I* were excluded. We conclude the answer is no, and consequently, the error was harmless. In denying the original section 1170.95 petition, the trial court did not rely *solely* on the facts contained in our opinion in *Penaloza I*. It also relied on other relevant parts of the record of conviction introduced into evidence by the parties, including Penaloza's admissions as recounted by a detective at Penaloza's preliminary hearing.[7]

---

7    Section 1172.6 (d)(3) (dealing with the evidentiary hearing stage of section 1172.6 proceedings) explains: "hearsay evidence that was admitted in a preliminary hearing pursuant to

At the preliminary hearing, Detective Lillian Johnson testified she advised Penaloza of his constitutional rights and then spoke with him. When speaking with Detective Johnson, Penaloza waived his right to remain silent, then made various admissions about his role in the robbery-murders. Penaloza told her "his part in this case was to transport the two victims to a predesignated location in Pacoima where [the victims] were going to bring the cocaine[,] and a dope rip off was going to take place[ ] [at which] the cocaine would be stolen from [the victims]." Penaloza told Johnson the two actual killers were Carlos Gutierrez and Juan Jose Paniagua. Penaloza also told Johnson he was aware Paniagua dealt cocaine, and he was apprehensive about introducing Paniagua to the victims, because he knew Paniagua would set up drug deals, take the money and drugs, and sometimes commit murder in order to accomplish these robberies.

Despite knowing Paniagua had committed similar robbery-murders, Penaloza put the victims in contact with Paniagua and Gutierrez. Penaloza also brought the victims to the location

subdivision (b) of Section 872 shall be excluded from the hearing as hearsay, unless the evidence is admissible pursuant to another exception to the hearsay rule." Here, if the case were to be remanded for a new evidentiary hearing, Penaloza's admissions implicating him as a major participant with reckless indifference to human life would be admissible under various exceptions to the hearsay rule, just as they were at the prior hearing. (Evid. Code, § 1230 [hearsay declarations against interest are admissible]; Evid. Code, § 1220 [hearsay party admissions are admissible].) At the prior hearing, Penaloza's counsel explicitly asked the court to review the preliminary hearing transcript, and the court took a recess in order to do so before ultimately denying relief.

where they were murdered. Penaloza knew he was bringing the victims there so Paniagua and Gutierrez could steal their drugs. When Penaloza was on his way with the victims, he started to feel bad, thought about telling one of the victims he was going to be robbed, but then decided not to divulge this information. Penaloza said he "didn't know [ ] [the victims] were going to get killed, but he knew they were going to get robbed." After the victims were killed, Penaloza fled the scene with the shooters. Paniagua gave Penaloza $2,000, told him to go to Mexico, and told him he would get the rest of his money after they sold the drugs.[8]

Given Penaloza's admissions, it is not reasonably probable that a finder of fact would conclude Penaloza was not a major participant in the robberies or did not act with reckless indifference to human life.[9] For this reason, the trial court's error in applying res judicata principles to deny relief, as well as the court's error in not appointing counsel and allowing briefing (see *Lewis*, *supra*, 11 Cal.5th at p. 957 [appointment of counsel and opportunity for briefing are required under section 1172.6]), were both harmless.[10]

---

[8] Paniagua originally offered Penaloza $10,000 for participating in the robbery. Another participant, Angel Rosalez, offered Penaloza $5,000.

[9] Indeed, in light of the facts contained in the preliminary hearing transcript, even assuming *Chapman* applied, we would find the error harmless under that standard as well.

[10] We likewise reject Penaloza's argument that the trial court's summary denial of his petition violated his federal due process rights. (Cf. *Lewis*, *supra*, 11 Cal.5th at pp. 972-973

## DISPOSITION

The order denying Penaloza's section 1172.6 petition is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

CURREY, P. J.

We concur:

COLLINS, J.

MORI, J.

---

[failure to appoint counsel under section 1172.6 is error under state statutory law only].)